IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

BRYAN P. WEST                                          Civ. No. 2:26-cv-1000-AA

            Plaintiff,                        **OPINION & ORDER**

        v.

OREGON DEPARTMENT OF
CORRECTIONS, et al.

            Defendants.
_____

AIKEN, District Judge.

Self-represented Plaintiff Bryan P. West seeks leave to proceed *in forma pauperis* ("IFP") in this action. For the reasons set forth below, Plaintiff's IFP Petition, ECF No. 2, is GRANTED. However, the Complaint, ECF No. 1, is DISMISSED with leave to amend.

**LEGAL STANDARD**

Generally, all parties instituting any civil action in United States District Court must pay a statutory filing fee. 28 U.S.C. § 1914(a). However, the federal IFP statute, 28 U.S.C. § 1915(a)(1), provides indigent litigants an opportunity for meaningful access to federal courts despite their inability to pay the costs and fees associated with that access. To authorize a litigant to proceed IFP, a court must make two determinations. First, a court must determine whether the litigant is unable to

Page 1 –OPINION & ORDER

pay the costs of commencing the action.  28 U.S.C. § 1915(a)(1).  Second, it must assess whether the action is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune to such relief. 28 U.S.C. § 1915(e)(2)(B).

With regard to the second of these determinations, district courts have the power under 28 U.S.C. § 1915(e)(2)(B) to screen complaints even before service of the complaint on the defendants and must dismiss a complaint if it fails to state a claim. Courts apply the same standard under 28 U.S.C. § 1915(e)(2)(B) as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012).  To survive a motion to dismiss under the federal pleading standards, the complaint must include a short and plain statement of the claim and "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  The court is not required to accept legal conclusions, unsupported by alleged facts, as true.  *Id.*

*Pro se* pleadings are held to less stringent standards than pleadings by attorneys.  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  That is, the court should construe pleadings by *pro se* plaintiffs liberally and afford the plaintiffs the benefit of

Page 2 –OPINION & ORDER

any doubt. *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). Additionally, a *pro se* litigant is entitled to notice of the deficiencies in the complaint and the opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment. *Id.*

## DISCUSSION

### I.    IFP Petition

When assessing an IFP petition, the Court first must determine whether the plaintiff has made a sufficient showing of indigency. Here, the Court is satisfied with Plaintiff's showing of indigency, and the IFP petition is granted.

### II.    Complaint

Turning to the Complaint, Plaintiff brings five claims against Defendants: the Oregon Department of Correction ("ODOC"); Peter Fercurka, P.M.H.N.P.' Moriam Balogun, N.P.; Therese Murkowski, L.P.N.' and John/Jane Doe, "Supervisory Officials." Compl. at 2-3. The identified individual defendants are sued in their individual and official capacities. *Id.* at 2.

Three claims are for violations of the U.S. Constitution under 42 U.S.C § 1983: First Amendment Retaliation against Defendants Fercurka and Balogun; Eighth Amendment Deliberate Indifference against all Defendants; and Fourteenth Amendment Due Process violation against all Defendants. *Id.* at 5. One claim is for violation of the Americans with Disabilities Act, 42 U.S.C. § 12132, against Defendant ODOC. *Id.* The final claim is for *Monell* liability against Defendant ODOC. *Id.* at 5-6.

The Court infers that the claims arise out of Plaintiff's time as an adult-in-custody ("AIC") in the ODOC system, though Plaintiff does not actually allege that he was ever an AIC in the ODOC system. Plaintiff does allege that he "is a qualified individual with documented disabilities, including Schizophrenia (MH3 code), PTSD, and Opioid Use Disorder (OUD)." Compl. at 3.

### A. Factual Allegations

To support the claim of First Amendment Retaliation, Plaintiff alleges that in May 2024, Defendant Fercurka "increased Plaintiff's Seroquel dosage to stabilize hallucinations and psychiatric symptoms." Compl at 3. Plaintiff alleges that around June 1, 2024, he was "involved in a self-defense altercation and placed in administrative segregation." Compl. at 3. Plaintiff alleges that on or about June 15, 2024, Defendant Fercurka "terminated Plaintiff's Seroquel prescription . . . as a disciplinary measure." *Id.*

Plaintiff subsequently filed a "formal grievance regarding this medical neglect" and alleges that Defendant Fercurka "retaliated by intentionally violating [Defendant Fercurka's] own established taper schedule" and dropp[ed] Plaintiff's dosage by an additional 100mg overnight[.]" Compl. at 4.

Defendant alleges that Defendant Balogun, "[i]n further retaliation for Plaintiff's multiple grievances . . . forced Plaintiff onto Sublocade injections against his medical preference." Compl at 4. Additionally, Plaintiff alleges that "[i]mmediately prior to Plaintiff's release (parole), Defendant Balogun dropped

Page 4 –OPINION & ORDER

Plaintiff to a 100mg injection, while allowing other releasing individuals to maintain sublingual tablets." *Id.*

To support the claim for a Due Process violation, Plaintiff alleges that on March 24, 2025, he was "falsely accused [by Defendant Murkowski] of 'diverting' Suboxone after a tablet accidentally fell from a medication cup." Compl. at 4. He further alleges that "Defendant Murkowski failed to verify this with available video evidence" and that "video footage exonerated the plaintiff." *Id.* He alleges that as a result, Defendant Balogun terminated Plaintiff's "life-sustaining MAT (Suboxone) 'cold turkey' without a disciplinary hearing or a medical review of exonerating evidence." *Id.*

Plaintiff alleges that as a result of the termination of his medication, he "suffered 30 days of extreme physical withdrawal and multiple grand mal seizures." *Id.* To support the claim of deliberate indifference, Plaintiff alleges that "Defendants provided zero medical intervention or monitoring" during this period and that [d]espite active knowledge of these life-threatening events[.]" *Id.*

To support the *Monnell* claim, Plaintiff alleges that "ODOC maintains a widespread, persistent, and unwritten policy, custom, or practice of permitting and tolerating its medical practitioners and correctional supervisors to weaponize life-sustaining psychiatric medications and Medication-Assisted Treatment (MAT) as a punitive mechanism for behavioral discipline." *Id.* at 6.

Page 5 –OPINION & ORDER

## B. Claims under 42 U.S.C. § 1983

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v Atkins*, 487 U.S. 42, 48 (1988). "A § 1983 claim also requires proof of causation, and allegations regarding causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Miranda v. Inmate Servs. Unit*, No. 2:23-CV-00567-AR, 2025 WL 2481171 at *3 (D. Or. Aug. 28, 2025). . (internal quotation and citation omitted).

Importantly, a State, its agencies, and its officials acting in their official capacity are not "persons" under § 1983, so cannot meet the second element of a § 1983 claim. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989).

Here, Plaintiff has made two claims under § 1983 against ODOC, which is a state agency. Those claims—Eighth Amendment Deliberate Indifference and Fourteenth Amendment Due Process—must be dismissed as to ODOC for failure to state a claim upon which relief may be granted. Because no amendment would render ODOC amenable to suit under § 1983, dismissal of these claims is without leave to amend.

Additionally, Plaintiff has sued the three individual defendants—state officials—in their individual and official capacities. Regarding the three § 1983 claims for violations of constitutional rights, those claims against Defendants Fercurka,

Page 6 –OPINION & ORDER

Balogun, and Murkowski in their official capacities must also be dismissed for failure to state a claim upon which relief may be granted. As with the claims against ODOC, dismissal of the official capacity § 1983 claims is without leave to amend

### C. Count 1: First Amendment Retaliation

"In the prison context, a First Amendment retaliation claim under 42 U.S.C § 1983 must establish that a state actor took a harmful action against a prisoner because of that prisoner's protected conduct and that the action did not 'reasonably advance a legitimate correctional goal.'" *Payne-Rana v. Wood*, No. 2:24-CV-01984-MO, 2026 WL 296088 at *3 (D. Or. Feb. 4, 2026) (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005)). "The filing of grievances against prison officials is a protected activity." *Id.* "A prisoner successfully pleads that the harmful action did not reasonably advance a legitimate correctional goal by alleging along with a retaliatory motive, the defendant's actions were 'arbitrary and capricious' or '"unnecessary to the maintenance of order in the institution.'" *Id.* (quoting *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012)).

Here, Plaintiff alleges that he filed a grievance regarding his medical treatment and that "within 24 hours" Defendant Fercurka "retaliated" by accelerating the "taper schedule" on a medication that Plaintiff took.

For this instance, Plaintiff adequately pleads the protected conduct (the grievance). But Plaintiff does not adequately plead the harmful action. First, Plaintiff does not actually allege harm—only that the taper schedule was changed. Plaintiff does not allege that this harmed him. Just as importantly, while Plaintiff does plead

Page 7 –OPINION & ORDER

a retaliatory motive, Plaintiff does not plead that the action—reducing the taper schedule—was without a legitimate correctional goal.

Plaintiff also alleges that Defendant Balogun forced Plaintiff to take injections, rather than sublingual tablets, for his Sublocade medication. Additionally, Plaintiff alleges that his dosage was changed for punitive reasons due to Plaintiff's filing of grievances.

The issues with this instance are the same as the previous. Plaintiff adequately alleges protected conduct and a retaliatory motive but does not plead harm or that there was no valid correctional goal in the change. Plaintiff may have preferred sublingual tablets, as he alleges, but that in and of itself does not allege the action was harmful.

Therefore, Plaintiff has failed to state a First Amendment Retaliation claim against Defendants Balogun and Fercurka in their individual capacities. As explained above, the claims against these Defendants in their official capacities fail without reference to the factual allegations because the Defendants are immune from a § 1983 suit in their official capacities.

### D. Count 2: Eighth Amendment Deliberate Indifference

"A public official's deliberate indifference to a prisoner's serious illness or injury violates the Eighth Amendment ban against cruel punishment." *Maney v. Brown*, 464 F.Supp.3d, 1191, 1209 (D. Or. 2020) (internal quotation and citations omitted). To succeed on such a claim, "[a] plaintiff must establish that he was confined under conditions posing a risk of objectively, sufficiently serious harm and that the

Page 8 –OPINION & ORDER

officials had a sufficiently culpable state of mind in denying the proper medical care." *Id.* (internal quotation and citations omitted). "Thus, there is both an objective and a subjective component to an actionable Eight Amendment violation." *Id.*

"To satisfy the objective prong, a plaintiff must show a serious medical need by demonstrating that failure to treat the prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Id.* (internal quotation and citation omitted). "The subjective component requires the inmates to show that the officials had the culpable mental state, which is deliberate indifference to a substantial risk of serious harm." *Id.* "'Deliberate indifference' is established only when the official knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (internal quotation and citation omitted).

Here, Plaintiff alleges that Defendant Balogun forced him to quit Suboxone "cold turkey," which led to "30 days of extreme physical withdrawal and multiple grand mal seizures" and that he was completely unmonitored for that period. At this stage, that satisfies the objective prong as to Defendant Balogun because it alleges that the "failure to treat . . . resulted in further significant injury [and] the unnecessary and wanton infliction of pain." Plaintiff does not adequately plead the objective prong as to Defendant Murkowski, who is not alleged to have been part of the termination of the medication or to have had a role in Plaintiff treatment—the

Page 9 –OPINION & ORDER

only allegation against Defendant Murkowski is that she "falsely accused" Plaintiff of diverting medication.

Turning to the subjective prong as to Defendant Balogun, Plaintiff alleges that "[d]espite active knowledge of these life-threatening events . . . Defendants provided zero medical intervention or monitoring[.]" While Plaintiff alleges that Defendants had "active knowledge, "he provides no facts to support it. Plaintiff similarly says the Defendants "ignored known risks of grand mal seizures[,]" but does not allege any facts about why those are "known risks."

Plaintiff has failed to state a § 1983 Eighth Amendment Deliberate Indifference claim against either Defendant Balogun or Murkowski in their individual capacities. Plaintiff is given leave to amend this claim consistent with this opinion.

### E. Count 3: ADA Title II Discrimination

A claim for Discrimination under the ADA requires a plaintiff to show that the plaintiff:

> "(1) is an individual with a disability; (2) is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his or] her disability."

*Updike v. City of Gresham*, 62 F.Supp.3d 1205, 1209-10 (D. Or. 2014) (internal quotations and citations omitted).

The Court looks only to the fourth element: that the discrimination was "by reason" of the disability. Plaintiff recites the element: "Defendant ODOC discriminated against Plaintiff based on his disabilities by denying him access to standard MAT and psychiatric care based on stigma and bias[.]" Compl. at 5. But that is not enough. Instead, Plaintiff must plead facts that make such a claim plausible.

This claim is dismissed with leave to amend.

### F. Count 4: Fourteenth Amendment Due Process

"The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022) (quoting U.S. Const. amend. XIV, § 1). The basis of a Due Process claim under the Fifth or Fourteenth Amendments is that a plaintiff has "recognized a property or liberty interest at stake." *Erickson v. U.S. ex rel. Dep't of Health & Hum. Servs.*, 67 F.3d 858, 861 (9th Cir. 1995) (citing *Schroeder v. McDonald,* 55 F.3d 454, 462 (9th Cir.1995)). "A liberty interest 'may arise from the Constitution itself ... or it may arise from an expectation or interest created by state laws or policies.'" *Johnson,* 55 F.4th at 1180 (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)).

"[P]risoners do not shed all constitutional rights at the prison gate, but lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal quotation and citations omitted).

Page 11 –OPINION & ORDER

"Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.* at 486.

"In order to analyze a procedural due process claim, [courts] engage in a two-step analysis: First, [courts] determine whether the inmate was deprived of a constitutionally protected liberty or property interest. Second, [courts] examine whether that deprivation was accompanied by sufficient procedural protections." *Johnson*, 55 F.4th at 1179.

> [A]n interest in avoiding certain conditions of confinement "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Id.* at 1180 (quoting *Sandin*, 515 U.S. at 484).

Here, Plaintiff alleges that his protected interest is in his medical treatment, specifically his Suboxone, the prescription for which was allegedly terminated by Defendant Balogun based on allegations by Defendant Murkowski that he was diverting the medication. Plaintiff does not identify a state law or policy that establishes this interest, so the claim must be premised on a constitutionally protected interest.

Plaintiff points to a lack of procedural safeguards—no hearing or medical review—but the Court does not reach the second step of the analysis unless it finds a protected interest necessitating procedural safeguards. Here, the withdrawal of medication does not implicate a "freedom from restraint."

Page 12 –OPINION & ORDER

The Constitutional right the Court can identify here is the Eighth Amendment's protection against cruel and unusual punishment. But, for prisoners, that is not a liberty interest protected by the Fourteenth Amendment; it is a separate claim, and one the Plaintiff has already alleged, as discussed above. *See Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) ("[C]laims by pretrial detainees are analyzed under the Fourteenth Amendment Due process Clause," but analogous claims by prisoners are analyzed under the Eighth Amendment).

This claim is dismissed without leave to amend, as amendment would be futile.

### G. Count 5: *Monell*

A *Monell* claim is named for the seminal case *Monell v. Department of Social Services of City of New York.* 436 U.S. 658 (1978). A *Monell* claim is a species of § 1983 claim, and, as such, States, their agencies, and their officers acting in an official capacity are immune from suit. Additionally, and distinct from the other § 1983 claims Plaintiff brings, *Monell* only applies to local governments, such as cities and counties, and may not be brought against natural persons. *See Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cit. 1992) ("[The Supreme Court] made clear that the municipality itself must cause the constitutional deprivation and that a city may not be held vicariously liable for the unconstitutional acts of its employees under the theory of *respondeat superior*" (citing *Monell*, 436 U.S at 691)); and *City of Canton v. Harris*, 489 U.S 378, 385 (1989)). This means *Monell* claims against state officials in their individual capacities are not available, nor could ODOC be liable under a *Monell*

theory. A *Monell* claim may not be brought against ODOC, as an arm of the state, for the reasons previously discussed.

Here, all Defendants are immune from or not proper parties to a *Monell* suit, so this claim must be dismissed without leave to amend.

## CONCLUSION

For the reasons set forth above, Plaintiff's IFP petition, ECF No. 2, is GRANTED but the Complaint, ECF No. 1, is DISMISSED with leave to amend and without service on Defendants.  Plaintiff shall have thirty days from the date of this Order to file an amended complaint. Plaintiff is advised that failure to file an amended complaint within the allotted time will result in entry of a judgment of dismissal without further notice.

It is so ORDERED and DATED this ____14th____ day of July 2026.


   /s/Ann Aiken
ANN AIKEN
United States District Judge

Page 14 –OPINION & ORDER